Our calendar is United States v. Mangas and I believe Ms. Agatstein, you're up first. And please let us know if you want to reserve any time for rebuttal. Good morning, your honors. Jessica Agatstein, federal defenders of San Diego. On behalf of Mr. Mangas, I'll try to reserve two minutes and I'll watch my clock. So this is a 1326 D case controlled entirely by this court's decision in Valdivia Flores. That case had the exact same facts as here. The defendant didn't have a right to be in the United States and he was removed for being an aggravated felon when he wasn't one. On those facts, this court held that Mr. Valdivia Flores had met his burden to quote, satisfy all three elements of USC 1326 D and his collateral attack on the underlying deportation order should have been successful. That's at 876 at third at 1210. The same is true here and so this court must reverse. Since you mentioned Valdivia Flores, there is definitely that language that you cite to. On the other hand, there's no analysis or reasoning in that. When we read opinions, we don't necessarily read it like a statute and try to parse every word. Instead, we try to see what the reasoning is. Is that still good, especially when you have additional cases like the Martinez-Hernandez cases? Were you actually bound by Valdivia Flores when it really didn't provide any reasoning? It seemed like it just presumed prejudice. Yes, so it wasn't a presumed prejudice case. It actually noted at page 1206, identified the defendant's argument as one where he needed to show some relief from removal, which in his case was that he couldn't have been deported on the asserted basis. On slightly different facts, your honor, we would be in a totally different world, but because these are the exact same facts and this holding was necessary to the outcome in that case, was necessary to find that Mr. Valdivia Flores had met each element in this narrow circumstance, yes, this court is controlled just because it's the same facts and necessary to the outcome there. I understand there's limited reasoning here. You know, obviously when we have the same facts and the same holding, the case controls, even if in slightly different facts with limited reasoning like this, it might not. Your honor did... In light of Palomar-Santiago, you say the government, I think that's correct and it's briefing. They concede the first two requirements of this collateral challenge. But in light of Palomar-Santiago, can we rely on that concession? Does that meet the requirements of Palomar-Santiago? I mean, it's not, well, I guess that is my question. We can rely on that in light of this recent, fairly recent precedent. Yes, for two reasons. The first is that the government made that concession again in its letter brief after Palomar-Santiago was issued. So it had the opportunity to consider that decision. The second is that here Mr. Mangas, you know, argued in his opening brief, each separate reason that he met D-1 and D-2, rather than just relying on the Ninth Circuit case law, assuming D-1 and D-2 be met. So here he actually did go through the elements for how, you know, there were no judicial review. Well, the government's concession is somewhat qualified, isn't it, in the sense that they suggest that if we were to find prejudice, there should be a remand. They would then have the opportunity, I gather, to show that an immigration officer had actually explained to the petitioner the rights that he had. So that perhaps, you know, he did not, he would not be able to show in light of that evidence that, you know, that he had, he had understood that he had a, they would argue he understood that he had a judicial remedy, but nevertheless, what do you make of that remand suggestion? Sure. So that's one option this court could take in this case. I don't think it need to, it needs to, because Mr. Mangas argued three separate reasons how he met D-1 and D-2, and that judicial waiver issue is, you know, one, one of those three recent reasons, and the government didn't address the other two in its briefing. But yes, that remand is an option. And then we would go, you know, then we would have the evidentiary hearing. What is your, what is your, what is your position on that? I understand it's an option. What's your position? My position is that this court need not, we would need not remand because we have argued three different reasons why Mr. Mangas met D-1 and D-2. But if we did remand for further evidence, wouldn't the government be able to show that because of the fact that he entered without inspection, that he basically, and in light of his criminal history, that he would, it would not be plausible that he would be entitled to any kind of relief? No, you're wrong. My apologies. No, no, your honor. And that's because Valdivia Flores held that on the exact same facts, a defendant has shown prejudice. Well, but that's before Palomar Santiago. And the question is, does he have an independent obligation to establish each of the I'm not sure we can presume because one and two are met that therefore that's automatically prejudicial. No. And to be clear, this court has never, never allowed defendants to be excused from showing prejudice. So Palomar Santiago mostly affected this court's case on D-1 and D-2. So Valdivia Flores is holding on prejudice hasn't been changed by Palomar Santiago. When you look at the, the notice and the final removal order, it does say the basis is aggravated felony, but also does mention that he had entered unlawfully without inspection. Is that enough to say that the government, you know, that was perhaps maybe an alternative grounds for the government's position that he should be removed? No, your honor, for I think two reasons. One is that if you look at that notice that it said, it alleges that he enters without inspection at an unknown place at an unknown time. And then the final order itself does not find that he entered without inspection and actually just finds that he wasn't in LPR. And so those findings are not enough on those grounds. Also note that Mr. Mangas didn't really have an opportunity to challenge anything in this case because he was obviously served with final order before he was served of the notice to issue the final order. And I'll just point out also when it comes to Valdivia Flores, the government argues at one point that the fact that Mr. Valdivia Flores entered without inspection in that case sort of lurked in the record. I think, I think it did not here because this court discussed Mr. Valdivia Flores' immigration history extensively in that case over the course of two pages, highlighting each of the four times he entered without inspection there. This court obviously thought it was relevant to the case then. Also, my colleague has asked about the Martinez-Hernandez case. You know, suggests that there may be some, perhaps some tension in the Ninth Circuit about what exactly is available for a showing of prejudice in a case like that, half what? Why, why do you dismiss, which I gather you do, the significance of Martinez-Hernandez on this prejudice issue? I think, so I don't dismiss it, but I think Martinez-Hernandez itself explains when prejudice can be shown by termination and proceedings and when it can't. So in that case, the defendants did have, the defendants convictions were alleged in the notice of intent and they were alleged to be aggravated felonies and they were, just the government chose the wrong legal theory to get there in the immigration proceedings. And in Martinez-Hernandez that case actually distinguishes Valdivia Flores and Ochoa Oregel, the two cases that we, you know, rely on heavily in our briefs saying, well, in those cases that those defendants had shown prejudice because the notices did not allege the alternative grounds for removal, the government then argued. And so that's the distinction in the Ninth Circuit is what's, what's alleged in notice of intent. Great. Well, you're down to about 25 seconds. You can have a couple of minutes on rebuttal. Thank you, Your Honor. Mr. Howe. Thank you, Your Honor. And may it please the court, Zach Howe on behalf of the United States. I will begin with Valdivia Flores. In that case, the government, the parties and the court did not breathe a word about the issues in this appeal. At no point did anyone discuss the non-LPR status effect on the prejudice analysis. No one discussed alternative grounds of removability. No one discussed plausibility of relief. Nothing that this court reached the exact conclusion we are asking this court to reach in the Reyes-Ruiz decision, which we think is persuasive here. And in fact, the government even argued in its brief at footnote eight, that Valdivia Flores had nothing to say on the matter. And this court clearly agreed. So this court has already reached that exact decision in unpublished authority. In published authority, Martinez-Hernandez at footnote two, the court also refused to apply Valdivia Flores to a different prejudice argument when a sort of superficial reading of Valdivia Flores might have suggested a different result in Martinez-Hernandez. So this court already has authority refusing to apply Valdivia Flores in the way that my friend on the other side is asking me to apply it here. I also want to know, but this is consistent. Mr. Howe, isn't counsel right in distinction is what charges are alleged in the notices. And in this case, there was only one ground and that is an aggravated felony conviction for voluntary manslaughter. And as counsel pointed out, there is a reference to the fact that he had entered without inspection, but that was not charged alternatively as a second ground for removal, was it? I think that's correct, your I think that would show that the removal order was erroneous, but it would not show that unfair prejudice resulted from that invalid removal order. And I think this is an important point to note. The text of 1326 expressly differentiates between the two. And I can quote the relevant language. It says that an alien may not challenge the validity of the deportation order unless the alien demonstrates the entry of the order was fundamentally unfair. So these are supposed to be separate things. And as the first circuit said in Castillo Martinez, adopting a reading like the one that my friend is asking for would necessarily render the final prong, the fundamental unfairness prong, quote, meaningless. And of course, recent Supreme Court authority tells us that they're not supposed to be meaningless. Every prong is supposed to be this argument has changed somewhat in the reply brief. But in the district court, Mangus was absolutely clear about what he was asking the court to do. If you look at page 19 and 20 of the record, his argument was, quote, there is no showing of prejudice required at all. He also says the deportation itself was prejudice. So that is what the ask here is. Mangus is asking the court to simply say he doesn't have to show prejudice. There is nothing in this court's authority that requires that conclusion. And just to circle back. So just to be sure I understand your position. So the charge that serves as the basis for the ground of removal does not circumscribe in any way the prejudice inquiry. As long as the government can hypothesize some other possible ground for removal within the applicable statutes, that suffices to establish precedent precedent. There's no limitation at all imposed by the charge that served as the ground for removal. Is that your position? It seems to be. Your Honor, I think there would be two limitations that could potentially be established by the court's existing precedent. One is looking to the Ochoa, Orogel and other LPR line of cases. The court has at least suggested that in that context, when you're dealing with an LPR, the court has said has important legal entitlements, broad constitutional protections, namely the right to remain in the country. Then the court is not willing to insert material from outside the notice to appear into the notice to appear to establish precedent. Now, obviously, we're not in that boat because Mangus had no right to remain in the country at all. But a second difference is that here, unlike in Ochoa, Orogel, you don't have to look outside the notice to appear. Now, it's true that the statutory citation may be improper, but all of the factual allegations supporting removal are in that notice to appear, even when you remove the erroneous material. And not only are they there, but they are undisputed and have never been disputed up through this appeal. So if you look at page 38 of the record, it alleges Mangus is not a United States citizen. He is not an LPR. He is a Mexican citizen. And he entered without inspection. Those allegations were all admitted before the immigration official at page 39 of the record. They were found by the district court at page 10 of the record. And they're admitted by Mangus on appeal in the very first paragraph of his fact section at page five of the opening brief. Also, Valdivia Flores, the petitioner, was not an LPR. Is that correct? That is correct. And your honor, I think the distinction there is simply that this court never breathed a word about the issues that are at play here. And maybe just to give one more example, I've talked about Reyes Ruiz and Martinez Hernandez, both of which refused to apply Valdivia Flores. This is also consistent with the way that the Supreme Court reads stare decisis. So we cite the Brecht v. Abrahamson decision. That's on purpose because it's dealing with an analogous harmless error argument. There, the Supreme Court says, look, we have applied the Chapman harmless error standard in habeas cases a handful of times. And it cites four examples. And some of those cases even do deep dives into what the Chapman harmless error standard means. And yet the court says, we've never squarely addressed whether that standard should apply so we can reach the issue. And the court ultimately applies a different harmless error standard. So here, I absolutely agree. A superficial reading of Valdivia Flores would at least tell you that, yes, the individual in that case did not have status. And yes, there was a prejudice finding. But at no point was non-LPR status or removability on other grounds or plausibility of obtaining relief from removal addressed. So it should not be interpreted as having addressed all of those arguments. You make it sound like the holding there in no way addressed what we're dealing with here. Opposing counsel has characterized that decision very differently. The entirety of the argument there was, I was wrongly removed as an aggravated felon, and therefore I suffered prejudice. So I do agree that that sort of face level argument that I suffered prejudice because I was wrongly removed as an aggravated felon was that issue. And that's in the briefs in the case. But what was never argued is that the fact of being a non-LPR, the fact of being removable on other grounds, the fact of not having any plausible claim of relief, none of that was ever addressed. It was never discussed whether that should affect the prejudice analysis or not. So in addition to running afoul of Reyes-Ruiz, Martinez-Hernandez, Breck v. Abrahamson, I think it would also just have the unhappy result, if this court were to apply Valdivia-Flores, of replacing reasoned decision making on very novel issues of statutory interpretation and proper notions of prejudice with a sort of superficial reading of a case that really just didn't address these issues. And it would force this court to read out the last prong of 1326D in the process. And it would also create a circuit split. The first, fifth, and tenth circuits have all reached the exact conclusion we're asking this court to reach. In fact, the first and tenth circuit have gone even farther and applied this interpretation in the LPR context, which we're not asking the court to do. So I would simply ask the court, apply the plain text of the statute, apply this court's persuasive authority from Reyes-Ruiz, apply the conclusions of the first, fifth, and tenth circuits, and decline to apply precedent from this court that simply has nothing to say on the matter. One question, does the Supreme Court's Palomar-Santiago case change any way how we should read Valdivia-Flores? So I agree it's dealing with different issues. It's dealing with D1 and D2 as opposed to D3. But what it does say unequivocally is that every prong of 1326 is mandatory. So I at least think broadly speaking, it would run afoul of that mandate to conclude, as Mangus is asking you to, that quote, there is no showing of prejudice required at all. With all due respect, that's not, I do not understand that to be the argument being made that there is no showing of prejudice required. They are arguing that prejudice is shown here. They just take a very different view of prejudice. So it seems to me to suggest that they're not arguing that prejudice has to be shown is quite a misrepresentation of the argument. Well, Your Honor, and to be clear, Your Honor, I'm quoting exactly from defense counsel in the district court when I say no showing of prejudice required at all. I realize they apply a different interpretation to what they're arguing in their reply brief. But I am trying to give exact quotes from what they said when I characterized their argument. Thank you. Thank you. We have a couple of minutes. Counselor, would you please respond immediately to that point that was just made about the nature of your argument on prejudice? Right. So we are arguing that we've shown actual prejudice here. And our argument is that prejudice is shown, as in Valdivia Flores, by showing that had a defendant's right to meaningful judicial review not been denied, had they been able to appeal, they would have won that appeal, and the notice would have been dismissed. And so that is the prejudice we're arguing. And to the point about, you know, what counsel said before the district court below, I agree with inartfully said, you know, there were a lot of moving parts in that hearing, but that is not what he intended to argue. And that's not what we're arguing here with the benefit of time. So he said it, but he really didn't mean it. Well, so it was a shorthand that it was a shorthand that there's no additional voluntary departure need to be shown. So and we are arguing for actual prejudice here, I did have a few points, but I want to make sure. So I want to I do want to say that, you know, the fact that the government now would argue Valdivia Flores differently, is available in future cases where the facts aren't so on point, but does not render that case not controlling here. I did also want to point out the government sites in unpublished case Reyes Ruiz that appoints this court to there are in fact unpublished cases that appear to be going both ways on this issue. It's hard to tell in part just because, you know, there's so little facts in a lot of this court's unpublished opinions. I did want to say to the extent that there's a and, you know, as Judge Barron wrote in the dissent in the First Circuit case that the government sites, Judge Barron actually points out, you know, this decision appears to be creating a split with existing Ninth Circuit law. So I think this case would not deepen any split or change any split. I think to the extent it exists, it's already there. And my final point is just on the text of 1326. You know, I argued in my briefing why I think the text actually supports our argument. And that's because the text refers to review of the order that was actually entered. And that's because the order itself is an element of the offense for criminal proceedings. It's not a hypothetical order. It's not a different order. It's the one that was submitted. Thank you.
judges: Lipez, TALLMAN, LEE